# UNITED STATES DISTRICT COURT
for the
Northern District of New York

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
FIVE MOBILE DEVICES SEIZED FROM THE VEHICLE ) Case No. 5:24-MJ- 408 (ML)
OF JAHLIL WILLIAMS, COLLECTIVELY REFERRED )
TO AS THE SUBJECT DEVICES, FURTHER )
DESCRIBED IN ATTACHMENT A. )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

FIVE MOBILE DEVICES SEIZED FROM THE VEHICLE OF JAHLIL WILLIAMS, COLLECTIVELY REFERRED TO AS THE SUBJECT DEVICES, FURTHER DESCRIBED IN ATTACHMENT A.

located in the   Northern   District of   New York   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and 846; Title 18, United States Code, 922(g)(1) | Distribution of, or possession with intent to distribute, controlled substances, and conspiracy to commit those offenses; Possession of a firearm by a felon |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Richard Gardinier 5999*
Applicant's signature

Richard Gardinier, ATF Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone   *(specify reliable electronic means)*.

*Miroslav Lovric*
Judge's signature

Date: September 4, 2024

City and state:   Binghamton, NY     Hon. Miroslav Lovric, U.S. Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF FIVE MOBILE DEVICES SEIZED FROM THE VEHICLE OF JAHLIL WILLIAMS, COLLECTIVELY REFERRED TO AS THE SUBJECT DEVICES | Case No.   5:24-MJ-408 (ML)<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Richard Gardinier, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for the search of the following five (5) mobile devices seized from the vehicle of Jahlil WILLIAMS during a traffic stop and subsequent arrest, collectively referred to as the "SUBJECT DEVICES." The SUBJECT DEVICES are currently in the possession of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). The description of the property to be searched is described in the following paragraphs and in Attachment A. The evidence sought is described in Attachment B.

2. I am a Special Agent with ATF and have been since January 2, 2017. I have attended the Federal Law Enforcement Training Center ("FLETC"), located in Glynco, Georgia, where in I was enrolled in, and successfully completed, both Criminal Investigator Training DouProgram ("CITP") and Special Agent Basic Training ("SABT"). During the course of my training, I received instruction on numerous subjects relating to criminal investigations, including physical surveillance, interviewing sources of information and defendants, reviewing telephone and financial records, applying for and serving search warrants, and firearms trafficking.

3. Prior to my time with ATF, I was employed by the United States Secret Service, Uniformed Division ("USSS/UD") for four years. I was enrolled in and successfully completed

the Uniformed Police Training Program ("UPTP") at FLETC, as well as New Officer Training with the USSS/UD, located in Beltsville, Maryland.

4. I am an investigative, or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of and make arrests for the offenses enumerated in Title 18, 21 and 26, United States Code.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe WILLIAMS has committed violations of Title 21, United States Code, Sections 841(a) and 846 (distribution of, or possession with intent to distribute, controlled substances, and conspiracy to commit those offenses); and Title 18, United States Code, Section 922(g)(1) (possession of a firearm by a felon) (collectively, the "SUBJECT OFFENSES"), are located inside the Subject Devices. There is also probable cause to search the SUBJECT DEVICES, fully described in Attachment A, for evidence, instrumentalities, contraband, and/or fruits of these crimes, as further described in Attachment B.

## FACTS ESTABLISHING PROBABLE CAUSE

7. On August 27, 2024, officers and detectives of the New York State Police ("NYSP") were conducting a proactive detail in and around the Destiny USA Mall, located on Destiny USA Drive, Syracuse, Onondaga County, within the Northern District of New York. While on patrol in an unmarked vehicle, a NYSP detective observed a black Toyota Highlander

bearing Georgia license plate CYL6730 (the "VEHICLE") operating in the mall parking lot. As the VEHICLE and the unmarked NYSP vehicle passed each other, NYSP detectives could smell the strong odor of burning marijuana emanating from the VEHICLE. Detectives followed and surveilled the VEHICLE as it left the mall parking lot and travelled on public roadways, entering an on-ramp to Interstate 81 southbound. As the VEHICLE merged onto the highway, it crossed over a solid fog line, committing a New York State Vehicle and Traffic Violation for failing to maintain its lane. At this point, the NYSP detectives activated their emergency lights and initiated a traffic stop, investigating a possible Driving While Ability Impaired ("DWAI") violation.

8.      Officers and detectives approached the VEHICLE and observed WILLIAMS, the sole occupant of the vehicle, in the driver's seat. Officers could smell the strong odor of burning marijuana coming from inside the passenger compartment of the vehicle. Officers could see, in plain view, an ash tray in the cupholders located in the center console of the VEHICLE which appeared to have ashes and other paraphernalia consistent with marijuana cigarettes. Officers asked WILLIAMS if he had smoked marijuana, and WILLIAMS admitted to having done so earlier that same day. Officers noted WILLIAMS' eyes appeared bloodshot and, based on their training and experience in prior DWAI investigations, asked WILIAMS to step out for the purpose of administering the Standardized Field Sobriety Tests ("SFSTs").

9.      While one officer was beginning the SFSTs on WILLIAMS, others began searching the area of the passenger compartment of the VEHICLE within reach of the driver's seat. Officers located a black satchel behind the passenger seat, within reach of the VEHICLE's driver's seat. Officers opened the bag and located 10 "bricks"[1] of what appeared to be a heroin/fentanyl mixture;

---

[1] A "brick" is a term commonly used to describe a package containing several glassine envelopes, inside of which is commonly a mixture of heroin, fentanyl, and/or analogues. Bricks are commonly stamped

several small baggies of a white powdery substance packaged for sale; approximately $6,000.00 in US currency; a scale with a white powdery substance on it which later field tested positive for cocaine; and various packaging materials such as glassine envelopes and rubber bands consistent with the distribution of heroin and/or fentanyl. The suspected narcotics were later field tested, and the substances tested positive for, respectively, fentanyl and cocaine.

10. Within the VEHICLE's passenger compartment, officers also located five (5) mobile devices. Your Affiant spoke to the NYSP officers who searched the vehicle about the exact location of the devices within the VEHICLE.[2] Officers recalled that one device had been found in the driver's door, and that the others had all been found in the center console area of the VEIHCLE. Since WILLIAMS was the sole occupant of the VEHICLE and the VEHICLE was otherwise free of debris or other belongings, there is little indication the SUBJECT DEVICES belong to anyone other than WILLIAMS.[3] The SUBJECT DEVICES are described as follows:

    a. A white Apple iPhone with a cracked screen contained in a clear case, having no visible IMEI, model or serial number;

    b. A purple Apple iPhone with a polka-dotted Kate Spade case having no visible IMEI, model or serial number;

---

with a logo so as to identify the product and/or its distributor to customers. Customers commonly purchase "bricks" or "bundles" (contained within bricks) that contain quantities of narcotics for personal use.

[2] NYSP officers were equipped with body cameras during the search of the VEHICLE's interior, which should have captured the exact location of each of the SUBJECT DEVICES within the VEHICLE. However, your Affiant has not yet been able to obtain copies of the body camera footage from NYSP for review prior to submitting this affidavit and search warrant application.

[3] Investigation is ongoing into whether the VEHICLE was rented under WILLIAMS' name or under some other individual's name. During a post-*Miranda* interview, described further below, WILLIAMS indicated that the vehicle had been rented by his girlfriend.

  c. A black Apple iPhone with a clear case bearing no visible IMEI, model or serial number;

  d. A blue TCL by Verizon flip style phone with no visible IMEI, model or serial number; and

  e. A second blue TCL by Verizon flip style phone with no visible IMEI, model or serial number.

  11. Officers placed WILLIAMS under arrest for possession of the controlled substances located within the VEHICLE. WILLIAMS was searched incident to arrest. A firearm was found in the waistband of WILLIAMS' pants. The firearm was a Glock 43X 9mm caliber pistol bearing serial number BSMP582. WILLIAMS is a felon, having been convicted of the New York State offense of Criminal Possession of an Assault Weapon—3rd Degree on April 15, 2022. The firearm was not manufactured in New York State and based on information currently available to agents, was likely manufactured in the State of Georgia.

  12. WILLIAMS was transported to the North Syracuse NYSP Barracks for processing. At the NYSP barracks, WILLIAMS was advised of his *Miranda* rights by NYSP Detective Jonanthon Gallo. WILLIAMS knowingly and voluntarily waived his *Miranda* rights and agreed to answer questions without an attorney present. During the ensuing interview, WILLIAMS admitted that he was aware that he had been previously convicted of a felony; that he was currently under the supervision of New York State Probation for a sentence arising out of that felony conviction; and that he was not permitted to possess a firearm based on that conviction.

  13. Based on my training and experience, I know that drug dealers often possess multiple cell phones, in order to separate personal calls from narcotics-trafficking-related calls to and from customers and suppliers. WILLIAMS was asked to provide passcodes so officers could

access the SUBJECT DEVICES. WILLIAMS indicated he knew the passcodes but made an ambiguous statement about possibly wanting to consult an attorney prior to providing them. Based on WILLIAMS' statement, no further questioning regarding the SUBJECT DEVICES took place. While the SUBJECT DEVICES were in custody of the NYSP/ATF at the NYSP Barracks, several of the devices continued to receive notifications. One of the devices, the black Apple iPhone listed in paragraph 10.c., above, received multiple notifications, the text of which were visible on the lock screen of the device. One message observed indicated the sender needed a "bun", which is a colloquialism for a user quantity of heroin or fentanyl. Based on WILLIAMS' statement that he knew the devices' passcodes, their proximity to WILLIAMS in the vehicle, WILLIAMS' sole occupancy of the vehicle, the fact that the vehicle was a rental and was otherwise clean of debris, and the fact that at least one device continued to receive drug-related messages after WILLIAMS' arrest, your Affiant is confident that WILLIAMS was in possession of the SUBJECT DEVICES at the time of the traffic stop.

## BACKGROUND ON THE USE OF CELLULAR TELEPHONES

14. As described above and in Attachment B, this application seeks permission to search for evidence, instrumentalities, contraband, and/or fruits of the SUBJECT OFFENSES that may be found on the SUBJECT DEVICES. One form in which this evidence may be found is data stored on the SUBJECT DEVICES' hard drives or other storage media.

15. I know, based upon my training and experience, that individuals involved in the commission of and conspiracy to commit firearm- and drug-related offenses, including the SUBJECT OFFENSES, often use cellular telephones and other electronic devices to facilitate and discuss their activities. From my training, experience, and discussions with other experienced investigators, I know it is common for individuals plotting a crime, such as the illegal possession

and distribution of both firearms and narcotics, to use their phones and electronic devices to communicate with other members of the conspiracy, locate targets or implements of the planned crime, and to maintain records related to their activities, including but not limited to, the following:

   a. Co-conspirator contact information and communications;

   b. Records of travel relating to their activities;

   c. Records related to the receipt, transfer, deposit and expenditure of income and other proceeds from the planned crimes, such as a sale of firearms and/or narcotics; and

   d. Contact with potential purchasers of firearms (including straw purchasers of firearms) and/or narcotics.

16. Based on my training, experience, and research, I know that the SUBJECT DEVICES have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence which reveals or suggests who possessed or used a device and the uses to which it has been put.

17. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, webpages that have been viewed via the Internet, as well as Internet search history, are typically stored for a period of time on the device. This information can sometimes be recovered with forensics tools.

18. There is probable cause to believe evidence of violations of the SUBJECT OFFENSES will be stored on the SUBJECT DEVICES, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic

files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, electronic devices' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Cell phone users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files which have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

19. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICES

were used, the purpose of their use, who used them, and when. There is probable cause to believe this forensic electronic evidence might be on the SUBJECT DEVICES because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

    b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a device or attached storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the device or storage media. This

  "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the device was remotely accessed, thus inculpating or exculpating the device owner. Further, device and storage media activity can indicate how and when the device or storage media was accessed or used. Additionally, some information stored within a device or electronic storage media may provide crucial evidence relating to the physical location of other evidence. For example, images stored on a device may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or another cellular telephone used in connection with an offense). The geographic and timeline information described herein may either inculpate or exculpate the device user. Last, information stored within a device may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the device may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the device or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

## NATURE OF EXAMINATION

20. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of Subject Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether there is evidence described by the warrant.

## CONCLUSION

21. Based on the foregoing information, there is probable cause to believe that WILLIAMS has violated Title 21, United States Code, Sections 841(a) and 846 (distribution of, or possession with intent to distribute, controlled substances, and conspiracy to commit those offenses); and Title 18, United States Code, Section 922(g)(1) (possession of a firearm by a felon). I respectfully request that a warrant be issued authorizing the search of the SUBJECT DEVICES for evidence, instrumentalities, contraband, and/or fruits of these offenses.

ATTESTED TO BY THE APPLICANT IN ACCORDANCE WITH THE REQUIREMENTS OF RULE 4.1 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.

                                          Respectfully submitted,

                                        *Richard Gardinier 5999*
                                        Richard Gardinier
                                        ATF Special Agent

     I, the Honorable Miroslav Lovric, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on September __4__, 2024, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

*Miroslav Lovric*
_____
Miroslav Lovric
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## Property to Be Searched

This warrant applies to the following electronic devices, to include any attached computer or electronic storage media including SD cards, all of which are currently housed at the offices of the Bureau of Alcohol, Tobacco, Firearms and Explosives Syracuse Field Office, located at 100 S. Clinton Street, Room 509, Syracuse, New York.

a. A white Apple iPhone with a cracked screen contained in an clear case having no visible IMEI, model or serial number

b. A purple Apple iPhone with a polka-dotted Kate Spade case having no visible IMEI, model or serial number

c. A black Apple iPhone with a clear case bearing no visible IMEI, model or serial number

d. A blue TCL by Verizon flip style phone with no visible IMEI, model or serial number

e. A second blue TCL by Verizon flip style phone with no visible IMEI, model or serial number

**ATTACHMENT B**

**ITEMS TO BE SEIZED AND SEARCHED**

1. All evidence, fruits, contraband, and instrumentalities of violations of Title 21, United States Code, Sections 841(a) and 846 (distribution of, or possession with intent to distribute, controlled substances, and conspiracy to commit those offenses); and Title 18, United States Code, Section 922(g)(1) (possession of a firearm by a felon), those violations involving JAHLIL WILLIAMS, specific the following from the SUBJECT DEVICES, described with specificity in Attachment A:

    a. Text messages, instant messages, chat room messages, emails, voice mail messages, and/or other communications relating to any purchase or transfer of firearms or controlled substances;

    b. Records regarding any calls made or received;

    c. Any photographs or audio recordings that relate to the purchase and/or transfer of either firearms or controlled substances;

    d. Geolocation, mapping, and GPS records including information recording schedules or travel;

    e. Records of, or information about, any Internet activity including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

    f. Evidence indicating the device user's state of mind as it relates to the crimes under investigation;

  g. Evidence of the attachment to the device or of the device to other storage devices or similar containers for electronic evidence;

  h. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device.

2. Evidence of user attribution showing who used or owned the SUBJECT DEVICES at the time the things described in this affidavit were created, edited or deleted, including:

  a. Logs, phonebooks, saved usernames and passwords, documents and browsing history to include internet activity, firewall logs, cashes, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-type web addresses.

  b. Evidence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as the evidence of the presence or absence of security software designed to detect malicious software;

  c. Evidence of the lack of such malicious software;

  d. Evidence indicating how and when the device was accessed or used to determine the chronological context of device access, use, and events relating to the crimes under investigation and to the device user;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4.     During the search of the SUBJECT DEVICES as described above, photographs may be taken to record the condition thereof.